Good morning. Good morning. May it please the court. My name is Gina Giampetti and I represent Plaintiff Appellant Mr. Matthew Desharnais. I'd like to reserve two minutes of my time for rebuttal. Mr. Desharnais respectfully requests that this court overturn the District Court's denial of his motion for attorney's fees and costs for three reasons. First, because his lawsuit was properly and timely filed in a court of law. Number two, because consistent with the Supreme Court's ruling at heart, Mr. Desharnais achieved success on the merits of this case when Unum voluntarily overturned its decision during the course of litigation. And three, because the factors articulated by this court in Hummel v. Southeast Rykoff weigh in Mr. Desharnais's favor. Let me just – please. No, no, no. I was going to pause you. I mean, let's assume we're with you on points one and two just for purposes of argument. Then you'd be in the Hummel factors. And our review there is for abuse of discretion? That is correct, Your Honor. The review for a denial of a motion for attorney's fees and costs is for abuse of discretion. However, any elements of legal analysis and statutory interpretation that go into that court decision are reviewed de novo. Okay. Do you think – were there any legal errors in the District Court's analysis of the Hummel factors? Yes, Your Honor. The court relied primarily in denying Mr. Desharnais's motion for fees on the argument that Unum put forward that this was an ongoing administrative process. On page eight, however, of the court's decision, the court said it didn't make any determination regarding Unum's compliance with ERISA. And in this case, Mr. Desharnais's administrative appeal was deemed exhausted at the time he filed his lawsuit because Unum failed to render a timely decision on his administrative appeal. That was the basis of the court's argument – the court's reasoning for denying Mr. Desharnais's motion in finding that it did not – that Mr. Desharnais had not exhausted his administrative remedies at the time he filed his suit and that his success came during an ongoing administrative process. However, the court in its – I don't – I think the court affirmatively disclaimed making a decision on whether or not he had failed to exhaust, right? I don't believe the District Court actually sort of decided that your client failed to exhaust his administrative remedies. Is that right? The court did not make a specific determination as to whether Mr. Desharnais exhausted his administrative remedies. And we believe that was an error, Your Honor, because under 29 CFR 2650.503-1. The reason I'm asked about – so sticking with the – sort of that third step or whatever. The reason I'm asked about that is I don't think the court decided that he failed to exhaust. He just – but the court – the way I read what the court was saying was that this was – it looks like it was still continuing to be part of an administrative process. And isn't it true that – I mean, I'm looking at it here. Didn't you call when you submitted the new IME or the IME and additional materials that actually ended up leading to your client getting the favorable decision from UNUM? I mean, you called it an administrative request for review, didn't you? Your Honor, first to your point, that IME was specifically requested by UNUM. UNUM said it could not participate in meaningful ADR until it received an IME. And in the Northern District where this court – where this case originated, ADR is a mandatory step in litigation. So to further the litigation, Mr. Desharnais agreed to participate in an IME, although he was not required to do so. And so when UNUM failed – he was required to do so by the agreement, by the documents, right? Like if UNUM wants an IME, they have the ability to ask for one. And then they were having trouble getting one coordinated. And they're still working to try to coordinate one, is my understanding. And then eventually you just provided one. UNUM has the right under the plan to request an IME during an administrative review. It failed to do so, which is why Mr. Desharnais filed suit, because UNUM never rendered a decision during the required period of the 90 days of the administrative review. They requested the IME before the end of that 90 days or not? Did it request him to participate in one? It did request it. Mr. Desharnais agreed. It was scheduled. And then for reasons unknown, UNUM actually canceled that IME after Mr. Desharnais had agreed to attend within that 90-day period. Which is my question. How many times was an IME actually scheduled or attempted to be scheduled? Truthfully, Your Honor, it's a bit unclear on UNUM's part. There was an agreement after, I believe it was in September of 2019, when UNUM said it needed an IME even after receiving letters from Mr. Desharnais' doctor saying that he was disabled within the terms of the plan. There was a request by UNUM for Mr. Desharnais. This is carrying on too long. We have a very limited amount of time. It seemed to me that there were at least four times that IME was scheduled and canceled or attempted to be scheduled and canceled.  Yes, Your Honor. There were multiple attempts for Mr. Desharnais to try and understand when an IME was scheduled. As indicated in our brief and in the record in this case, there's communication, I believe, three or four letters sent from Mr. Desharnais' counsel to UNUM trying to figure out when an IME would be scheduled. Allegedly, one was scheduled for October 1st of 2019. But no information was communicated to Mr. Desharnais, and it appears that that IME was canceled. How many of the IMEs, if any, was your client responsible for canceling? Mr. Desharnais did not agree to attend an IME after the administrative review period. He received notification, not from UNUM, but from a third party on the day that UNUM's appeal decision was due, saying that a— Is there an answer coming to my question, which is, how many is your client responsible for canceling, if any? None during the administrative appeal, Your Honor. After the administrative appeal ended and Mr. Desharnais filed suit, he said he would attend an IME so long as his counsel was present during the interview portion of that, because the fees had now moved from the administrative process to active litigation. And was he, under Ninth Circuit law, entitled to be present during the IME? I don't believe that there is Ninth Circuit law on point on that, Your Honor. Any of that claimed to be part of the bad faith, the point at which there is no law? No, Your Honor. The — I had a hard time trying to figure out, what is the bad faith that you assert under the humble factor? The bad faith, Your Honor, is that UNUM failed to render a decision as required by ERISA regulations within a 90-day period. It then said that it could not, once a lawsuit had been filed, could not participate in mandatory ADR until it received an IME from Mr. Desharnais. Then it failed to schedule an IME in which Mr. Desharnais's counsel could be present during the interview portion only, because we were now in litigation versus an administrative appeal. And then the case dragged on, Your Honor, for 11 months approximately. When UNUM failed to schedule its IME, Mr. Desharnais took it upon himself to do so to advance the litigation, which was the right course of action in this case, because UNUM did, in fact, overturn its decision. Thank you. My colleagues may have questions. I don't want to hog all the time here, but it — Do you want to save some time for rebuttal? I would, Your Honor. Thank you. Good morning. May it please the Court. My name is Nicole Blom. I represent UNUM Life Insurance Company of America. We're here today to ask the Court to affirm the district court's ruling because the benefits were reinstated during the administrative process without court involvement. I know the Court jumped right to the HUML factors, but I would like to take some time to talk about the administrative process, because this was a decision that was entirely within the administrative process, even though a lawsuit had been filed. Before the lawsuit was filed, UNUM Life was trying to schedule the IME. And there were delays because there were objections to why it was needed, as well as the distance, the time, and the type of doctor that UNUM Life was arranging. This did take some time, and so UNUM Life paid benefits under reservation of rights so that it could continue this process. Before the IME could be done, the lawsuit was filed. And even after the lawsuit was filed, UNUM Life continued to try to schedule the IME. So, Counsel, we don't have a lot of time, and I think we're all pretty familiar with what happened in this. So, I have a question about, to take you back to HUML, just because one thing that seemed a little odd to me was you got these five factors. And if I remember right, the district court listed some as neutral, and then I can't remember exactly where the district court came out on all of them. Obviously, the second factor pretty much always favors the claimant, unless, I guess, the company's bankrupt or something like that. But the one thing I thought was a little bit odd is, if I remember right, the district court on the first factor, which is the culpability or bad faith, didn't, I mean, consistent with what I think Judge Jezicero was getting at, didn't find bad faith. But then I think the district court concluded that that made the factor neutral. So, I'm trying to figure out how these factors actually apply. Normally, you think of a factor as, you know, I suppose it can be neutral, but it'll cut one way or the other. But it sounds like if that factor, if, say, the first factor, if lack of bad faith is only neutral, then it's kind of an odd factor, right? Because it, you know, the best you can hope for if you're, you know, your client is getting to neutral. Is that right? Or do you think that that factor, you know, if you don't have bad faith, if you've got good faith, then you would think that factor might cut in favor of the non-claimant. If you have bad faith, it cuts in favor of the claimant. And I suppose it could be neutral if you just drew up your hands and couldn't know. I'm just trying to figure out a lot of these, several of the factors that seem to me, at least the way the district court judge sort of went through them and ended up concluding they were neutral, I wondered if it's ever even possible for those factors under that sort of analysis to benefit your client or to lean in favor of your client. I do think it is, I do think that the courts have looked at it in the shoes from the party that's seeking the benefits against the party. So I do think that it is, the courts have tended to look at it against the party that they're looking for fees from. But in this case, I do think that the court could not make a determination and it was neutral because it hadn't engaged in the fact finding. The reinstatement of benefits was not with judicial involvement at all. And so the court couldn't make that decision without the lengthy inquiry that this court has talked about and that Hart talked about. If you need to make a lengthy inquiry into the success or what the merits are, then that's not what the Supreme Court or even this court in the more recent Woolsey case had talked about. You need to be able to look at it then and there. And in this case, there could be no finding of bad faith or culpability, nor was deterrence or even the merits an issue because the court hadn't made any judicial determinations at all. Breyer. Well, wait a minute. There are other ways, if I may, if I'm not interrupting. Okay. All right. There are ways of complying with the IME request form by your company, correct? You can request an IME and schedule it. Yes. Now, in this case, you requested an IME, and as best as I can tell, only on one occasion was it actually scheduled. I believe that it was originally scheduled for October 1st. Right. And then at that point, that's where it was scheduled in Walnut Grove, and there was a disagreement as to why an IME needed to be done at all, and that was too far away, and the company offered to provide transportation. Right. So they were trying to work out another schedule. And at that point, it was scheduled again for October 21st in Walnut Creek, which was closer than Walnut Grove, and that was, again, issues with the timeline. And then after the lawsuit was filed, they did try to schedule it on two more occasions, but there was no IME doctor that would allow the attorney to be present. Well, as I understand it, the — initially, it's a little bit more complex than that, is that you said, we cannot proceed with this case without an IME, and then you gave the name of doctors to perform the IME who declined to perform the IME. They said they didn't conduct IMEs. Am I misunderstanding the briefing? That's what I thought this argument would be helpful to me to understand. Yes, thank you. Just a little bit. It was the plaintiff's attorney who gave the list of additional names for the IME that we contacted to find out if they would do it, and they would not allow the attorney present either. And at that point, Unum Life, after the lawsuit was filed, discontinued benefits and said, we're not going to ask for any of the benefits that were paid under reservation of rights. We're going to give you an opportunity to appeal. And that's exactly what happened. They did another administrative appeal, and it was during that appeal that they did their own IME that Unum Life was not involved in at all. But it was part of the hundreds of pages of records that Unum Life actually did consider and did reinstate voluntarily the benefits. So why did it take so long? I mean, he ultimately got the benefits. What is your position on why this took as long as it did? I do think that the interference with the ability to just schedule the date as intended, if it had gone forward on October 1st, I think that it would have been done. A decision would have been made one way or the other. So you're free from fault? I think that Unum Life didn't commit liability because it was trying to do a full and fair review, yes. And in that process, there is delay that even counsel's briefing acknowledged that scheduling an IME does take some time. It doesn't happen overnight. It is sometimes a process. And they were just trying to give that full and fair review to Mr. DeHarning. Can I ask about that? You have 90 days, and as best I could tell by looking at the law here, that 90 days is, you know, you get 45 days technically, and then you can get an extra 45. But it seems like if the IME is not done, not only does it have to be done, but in theory you have to get the report back from the doctors, and then I assume you'd have to have Unum's doctors look at it. That all takes time, but that 90 days is kind of a hard and fast rule, and you don't really get extensions past that except for your de minimis argument, the de minimis exception, which is kind of odd. I don't know, it seems to me that creates sort of perverse incentives for claimants to drag their feet a little bit on getting the IME done. Is there anything in case law about that? I do agree with that, and I do think that, you know, one of the points that you're touching on is that the dragging of the feet in creating these automatic ERISA violations interferes with the planned soundness and stability that this court talked about in the CAN case. I mean, if you're going to allow the stringent violation of the timeline without tolling, I mean, because tolling is part of ERISA, in that case that would affect the planned soundness and stability, and especially here in this case where the administrative process is ongoing. In the other cases, the administrative process had been completed, and there was no gray area where a lawsuit was also filed, and there were also ERISA violations. In our case, there were no ERISA violations found, and the company was just trying to do its job and complete its full and fair review and do an IME. Is the fullness and the fairness of the review in this case affected by the nature of the claimant's work? I mean, he was a corporate attorney. I don't know if it's in the record, but I'm presuming he enjoyed a significant salary. Is the value, if you will, of this case, did that have anything to do with the delay? I don't know. Definitely not. It certainly doesn't. It doesn't matter what his occupation is or the condition. The fact is that the company found it impossible to decide one way or another that, well, it actually thought the benefits were not payable, but it did have some discussions with the treating physicians, and there was a disagreement. And so Unum Life appropriately concluded that an IME was necessary, and that's where the further delay in the lawsuit took place. But the decision-making as far as the benefits being reinstated was entirely within the administrative process. Okay. Hearing no other questions, thank you, Ms. Bloom. We appreciate your argument, and we will now hear a rebuttal. Thank you. Thank you. I'd just like to quickly touch on a point that Judge Van Dyke brought up in asking whether plaintiffs would sort of play around with this strict compliance rule, and I would just like to point the Court's attention to guidance that the Department of Labor gave in 2000, following an amendment of ERISA in which the Department of Labor said, given the limited remedies available in a suit under ERISA, claimants will have little incentive to invoke this provision, the strict compliance provision, unless they believe they will be unable to receive fair consideration from the plan. And that is exactly what happened in this case, Your Honor. As this Court has recognized, ERISA is remedial legislation that should be interpreted favorably for plan participants. That means Mr. Darnay. UNAM had an obligation to strictly comply with claims handling regulations, and it failed to do so. And the court, the district court in this case, did not afford that full consideration when it denied Mr. Darnay's motion for attorney's fees and costs. Thank you very much. Thank you, Your Honor. The matter of Darnay v. UNAM Life Insurance Company is submitted. We thank both counsel for their helpful arguments this morning.
judges: Lucero, BRESS, VANDYKE